# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## HENRY OMOHUNDRO v. COMMONWEALTH.

### March 20, 1924.

Absent, Burks, J.

1. CONFESSIONS—*Must be Voluntary—Burden of Proof.*—In order to render a confession admissible in evidence the burden is upon the Commonwealth to show that the confession was voluntary.

2. CONFESSIONS—*Whether Voluntary—Question for Trial Court.*—The decision of the question of fact of whether or not a confession is voluntary is for the trial judge upon consideration of all of the evidence on the subject.

3. CONFESSIONS—*Whether Voluntary—Test—Discretion of Trial Court—Review.*—The real question in every case as to whether or not a confession is admissible, is whether or not the confessing mind was influenced in a way to create doubt of the truth of the confession; and over this sort of question the trial court has a wide discretion, and its decision is not ordinarily to be disturbed on review.

4. CONFESSIONS—*Voluntary Confessions—Confession to a Person in Authority—Confession to Prosecutor.*—In cases which involve, as the motive of the confession, the question of the existence of an anticipated benefit, it is material to enquire whether the person to whom the confession is made and who offers or holds out the benefit, or in whose behalf it is offered or held out, or from whom it is expected, is "one in authority," for it is reasonable to infer that a prisoner's expectation of favor may be more confidently excited by a promise thereof from "one in authority" than by a promise from some one without authority (*i. e.,* ability or power) to perform the promise. And it is uniformly held in such cases, where the confession is made to the prosecutor, that it is made to "one in authority."

5. CONFESSIONS—*Voluntary Confessions—Confession to a Person in Authority—Confession to Prosecutor—Case at Bar.*—In the instant case the confession in question was made to the attorney, vice-president, and superintendent of the Corporation—the representatives of the prosecutor, having the matter of the examination of the accused in charge—and, hence, was, in legal effect, made to the prosecutor, and so was made to "one in authority."

6. CONFESSIONS—*Whether Voluntary—Case at Bar.*—In the instant case, where the confession was not induced by any anticipated benefit, the sole question was whether there was sufficient evidence to sustain the finding of the trial court that the confession was voluntary, and this irrespective of the authority of the prosecutor, of whom the persons to whom the confession was made were the representatives.

7. CONFESSIONS—*Finding of Trial Judge that Confession was Voluntary—Weight of Such Finding on Appeal.*—Upon appeal the finding of the trial judge that a confession admitted in evidence was voluntary is entitled to the same weight and effect as is given to a finding of fact by a jury.

8. CONFESSIONS—*Voluntary Confessions—Evidence Sufficient to Support Finding that Confession was Voluntary—Case at Bar.*—In the instant case the evidence of the attorney for the Commonwealth was to the effect that he did not in words or manner in any way threaten the accused, or make him any promise of any benefit prior to his confession, and that he did not at any time afterwards make the accused any promise of any benefit whatever. This testimony was corroborated in every particular by the testimony of others present. The testimony was heard *ore tenus* by the judge.

*Held:* That the credibility of the witnesses was for the judge to decide, and there was ample evidence to sustain the finding of the trial judge, that the confession was voluntary.

9. LARCENY—*Receiving Stolen Property—Evidence that Defendant Knew that the Property was Stolen—Case at Bar.*—In the instant case, a prosecution for grand larceny, there was sufficient evidence before the jury to support their finding that the accused at the time he received the stolen property knew it to be stolen. It was true that there was no evidence that the thief had directly communicated the fact to the accused that the property was stolen. But the circumstances testified to by the thief were such that, if he was to be believed, the conclusion was inescapable that the accused knew that the property was stolen, without the need of any express communication from the thief on the subject.

*Held:* That the credibility of the thief's testimony was for the jury; and besides, there was the confession of the accused which, in substance, admitted that the testimony of the thief was true.

10. LARCENY—*Grand Larceny—Value of Goods Stolen—General Fraudulent Scheme—Case at Bar.*—In the instant case accused was convicted of grand larceny. The subject of the larceny was glass stolen from his employer by the thief. The value of the glass received by the accused at no time amounted to the sum of $50.00, but there was sufficient evidence to support the finding of the jury to the effect that the receipts of glass by the accused from the thief was a continuous transaction, done in pursuance of a single impulse of the accused, and in execution of a general fraudulent scheme between the accused and the thief, and that the amount of glass received by the accused

pursuant to this general fraudulent scheme amounted to the sum of $50.00 or more.

*Held:* That a verdict of guilty of grand larceny would not be disturbed.

11. ASSIGNMENT OF ERRORS—*Separate Bill or Certificate of Exceptions—Rulings on Objections to Evidence.*—In the instant case there were certain assignments of error to the action of the trial court in admitting certain testimony objected to on behalf of the accused, as appeared from the general bill of exceptions which certified all of the evidence; but there was no separate bill or certificate of exceptions before the appellate court showing the rulings complained of in such assignments of error.

*Held:* That the record was not sufficient to bring up such rulings.

Error to a judgment of the Corporation Court of the city of Norfolk.

*Affirmed.*

The accused, Henry Omohundro, was convicted of grand larceny and sentenced to confinement in the penitentiary for a period of two years in accordance with the verdict of the jury.

There was direct evidence for the Commonwealth before the jury, consisting of the testimony of one Robert Layton, which was to the following effect, namely:

That during the period of practically eighteen months, from early in September, 1921, to March 9, 1923, the accused bought of the said Layton, who was an employee of the Building Supplies Corporation and in charge of a warehouse of such corporation, certain plate glass belonging to that corporation, of the aggregate value of approximately $2,000.00, knowing the same to be stolen by Layton. That during the period mentioned the accused was a regular customer of and made frequent legitimate purchases of plate glass from said corporation, in the following manner: On an average of twice a week the accused would go or send to the aforesaid warehouse for certain quantities of

plate glass, which would be delivered to him and for which he would sign tickets, known as dray tickets, which were turned in to the office of said corporation by Layton. In accordance with these dray tickets the accused would be charged on the books of the corporation with such purchases of glass and monthly the accused would pay to the corporation the amounts owing by him for such purchases. That the aforesaid stealing by Layton and buying from him by the accused of the stolen plate glass began and continued at the suggestion and request made by the accused to Layton, and the method pursued was as follows: When the accused would come or send to the warehouse for his aforesaid legitimate purchases of glass, Layton would put on the truck of the accused two or three extra pieces of plate glass, the selling price of the corporation for which was approximately $5.00 for each piece, but would make no entry on the dray tickets of such extra pieces, and the accused would subsequently pay Layton $2.00 for each of such extra pieces of glass, which Layton appropriated to his own use, not keeping or rendering any account thereof whatever to the said corporation, the owner of the glass. That in the beginning of said period the accused would designate each time how many extra pieces of glass he wished put on the truck; but subsequently, during the remainder of said period—which was during the greater part of the period—Layton, having been previously requested by the accused to do so, would, from time to time, of Layton's "own accord," put extra pieces of glass on the truck, for all of which the accused paid Layton as aforesaid, with the single exception of the last delivery of extra pieces of glass by Layton to the accused, which occurred on March 9, 1923, and was of four pieces, amounting to $8.00, at the aforesaid price of $2.00 per

piece, for which the accused, on March 10, 1923, paid Layton in part $5.00, leaving $3.00 balance owing to Layton therefor.

There was also direct evidence for the Commonwealth before the jury, consisting of the testimony of the vice-president and also of the superintendent of the said corporation, to the effect the accused had previously to the aforesaid period stolen plate glass from the corporation and had been caught stealing it.

There was also before the jury evidence in behalf of the Commonwealth, to the effect that, on March 13, 1923, the accused made a voluntary confession to the attorney, to the vice-president and to the superintendent of the aforesaid corporation (the prosecutor in this case), admitting, in substance, that the statements of Layton, which are contained in the aforesaid testimony of Layton, were true.

According to the testimony for the Commonwealth the circumstances attending the aforesaid confession of the accused were as follows:

On March 13, 1923, the attorney, vice-president and superintendent of the said corporation obtained from the said Layton a full confession of the aforesaid larceny, which was reduced to writing, and which, while it is not in the record, appears from the evidence to have been substantially the same as the aforesaid testimony of Layton given on the trial of the instant case, except that in such confession Layton estimated the extra plate glass he had sold to the accused at an average of some eight or ten pieces a week during said period of eighteen months, which, at the value of $5.00 each, the said corporation estimated approximately $4,500.00 in value.

Having gotten the aforesaid confession of Layton, on the same day, to-wit, on March 13, 1923, the at-

torney for said corporation requested the vice-president to get the accused to come "around there," where the attorney, the vice-president, the superintendent of, and a detective employed by, and another employee of, the corporation, and said Layton then were in an upstairs room of the office of the corporation, "on some pretext," for the purpose of having a talk with the accused. Thereupon, at the request of the vice-president, the superintendent of the corporation went to the place of business of the accused about noon of the day last mentioned, saw the accused and induced him to come to the aforesaid room in the office of the corporation upon the false pretext, or artifice, that the vice-president wanted to make an arrangement with the accused to give the latter certain work to do which was considerable in quantity. The accused, accompanying the superintendent, went at once around to the aforesaid room, reaching it shortly after the noon hour.

According to the testimony for the Commonwealth the room was normally well-lighted, the door to it open, when the accused arrived, and that the door remained open during the whole time the accused was in the room, which was approximately one hour and a half. That upon the entrance of the accused into the room the attorney for the corporation was introduced to him. That the other persons then present in the room were the same as above mentioned as being there when the attorney asked that the accused be sent for, as aforesaid. That the attorney did all of the talking prior to the aforesaid confession made by the accused.

The testimony of the attorney, one of the witnesses for the Commonwealth, as to what there and then occurred, is as follows:

"I said: 'Omohundro, Mr. Layton is here and has made a confession in which he implicated you. He

states over a period of a year and a half he has been stealing glass from the Building Supplies and he has been delivering this to you on your wagon, and he has been receiving from you and you have been paying him $2.00 per glass, and it is estimated it is around forty-five hundred dollars.' I said: 'How about it?' I didn't mince my words. He says: 'Well, I don't know how about it.' I said: 'I want to know exactly how much glass you have been buying from Layton, because you have been stealing from this company.' So I said: 'You paid them around about one thousand before this.' I said: 'I want to know how much stuff you have been getting from Layton.' He says: 'How much does Mr. Layton say I got?' I said: 'He said he thinks you would average about twice a week four or five glass, which would make eight or ten a week, and it would put it something over four thousand dollars.' I remember the conversation distinctly as I was interrogating him with the point in view. He says: 'I don't want to dispute Mr. Layton, but I think it is nearer two thousand,' and, he says, 'don't think I got that much,' and he said (addressing Layton), 'Layton, two or three weeks would go at a time and you didn't deliver me any. You were on your vacation and you didn't give me any then.' I read the confession (of Layton). I said: 'The only thing Layton can do is to average the amount and he thinks it averages four or five at a trip and twice a week.' I said: 'Did you get it?' and he said: 'Yes, sir; I got it from him.' I did use this expression: I said: 'Why are you such a damn fool, Omohundro; now you are back here stealing again?' He said: 'A man will do mighty foolish things.' ''

The testimony of the attorney is to the further effect that he did not in words, or in manner, in any way

threaten the accused, nor make him any promise of any benefit prior to the aforesaid confession of the accused, and that he did not at any time afterwards make the accused any promise of any benefit whatever.

The aforesaid testimony of the attorney is corroborated in every particular by the testimony for the Commonwealth of the said vice-president, superintendent, Layton and Page. The detective did not testify in the case.

There is further testimony in the record to the effect that after the said confession was made by the accused the said attorney insisted that the accused execute a note for $2,000.00 as covering the value of the glass, which the accused had admitted that he had bought of Layton, knowing it to be stolen property, and a deed of trust securing the payment of such note; and that such papers were then and there prepared and, after some demur on the part of the accused at the amount of the note being $2,000.00, rather than for some less sum, were executed by the accused; but as there is no assignment of error complaining of the admission or failure to exclude such testimony, no further reference in detail need be made thereto.

The accused testified in his own behalf denying his guilt and denying repeatedly that he had made any confession of guilt whatever. His testimony was that he made no reply whatever to the aforesaid question of the attorney as to what the accused had to say about the charge of his guilt, which Layton had made as aforesaid. The testimony of the accused is, further, that no threat of punishment of him for the crime alleged against him, and no promise of any benefit whatever was made to him prior to or at any time during his presence in the aforesaid room. His testimony is that he was forced to execute the note and

deed of trust aforesaid by duress, consisting of his fear that personal harm—bodily violence—would otherwise be done to him at the time by the attorney and others present, whom he thought at the time were members of the "Ku Klux Klan;" but touching such fear, admits that there was no express threat of such harm or violence made against him by any one, claming that the attitude of the persons present was to such a degree threatening that he was put in fear of bodily harm, and therefore executed said papers. With respect to the circumstances stated by the accused as evidencing the threatening attitude mentioned by him, it is sufficient to say that he was contradicted in every material particular by the evidence for the Commonwealth.

*Edward Walbridge* and *Tazewell Taylor*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

Sims, P., after making the foregoing statement, delivered the following opinion of the court:

All of the questions which can be considered as presented by the assignments of error will be passed upon in their order as stated below.

1. Did the trial court err in overruling the motion of the accused to exclude the testimony for the Commonwealth showing the confession of guilt of the accused, on the ground that the confession was involuntary, being extorted by threat or fear of bodily harm to the accused?

The question must be answered in the negative.

[1-3] It is true that, in order to render it admissible in evidence, the burden rested upon the Commonwealth to show that the confession in question was voluntary; but the decision of that question of fact was for the trial judge, upon consideration of all of the evidence on the subject. 1 Bish. New Cr. Proc. (4th ed.) section 989. "* * as often said, the real question in every case is whether or not the confessing mind was influenced in a way to create doubt of the truth of the confession." (*Idem.* section 1224.) To the same effect see *Smith's Case*, 10 Gratt. (51 Va.) 734. "Over this sort of question, the court has a wide discretion" (1 Bish. New Cr. Proc. section 1222); and its decision by the trial judge "is not ordinarily to be disturbed on review." (*Idem.* section 1220.)

If the confession, says Mr. Bishop, is "an involuntary one, uttered to bring temporal good or avert temporal evil, even where the anticipated benefit is small (it) will be rejected." 1 Bish. New Cr. Proc. section 1223 (2). See to same effect *Bram* v. *U. S.*, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568.

[4] In cases which involve, as the motive of the confession, the question of the existence of an anticipated benefit, it is material to enquire whether the person to whom the confession is made and who offers or holds out the benefit, or in whose behalf it is offered or held out, or from whom it is expected, is "one in authority," for it is reasonable to infer that a prisoner's expectation of favor may be more confidently excited by a promise thereof from "one in authority," than by a promise from some one without authority (*i. e.*, ability or power) to perform the promise. And it is uniformly held in such cases, where the confession is made to the prosecutor, that it is made to "one in

authority." *Shifflet's Case*, 14 Gratt. (55 Va.) 652, 660; *Smith's Case*, 10 Gratt. (51 Va.) 734, 740; 1 Bish. New Cr. Proc. (4th ed.) section 1233 (3); 7 A. L. R. note page 420, *et seq.*

[5, 6] In the instant case the confession in question was made to the attorney, vice-president and superintendent—the representatives of the prosecutor—having the matter of the examination of the accused in charge, and, hence, was, in legal effect, made to the prosecutor, and so was made to "one in authority." However, we regard the circumstance that the confession was made to such a person as immaterial in the instant case, as, according to all of the evidence, the confession was not induced by any anticipated benefit whatever. The sole inquiry, upon the subject under consideration, is whether there was sufficient evidence to sustain the decision of the trial judge finding the fact that the confession was voluntary, and was not involuntary, because of its having been extorted by the duress of some threat or fear of bodily harm to the accused from the persons to whom he made the confession in question, irrespective of the authority of the prosecutor, of whom these persons were the representatives. 1 Bish. New Cr. Proc. *supra*, section 1237; *Bram* v. *U. S.*, *supra*, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568.

[7] That is to say, as we have seen above, the authorities are in accord in the holding, which is, in substance, that, upon review on appeal, the aforesaid finding of fact of the trial judge is entitled to the same weight and effect as is given to a finding of fact by a jury.

[8] The evidence on the subject under consideration is, so far as deemed material, set out in the statement preceding this opinion; and it is deemed sufficient here to say that it was heard *ore tenus* by the judge, the credibility of the witnesses was for him to decide upon,

and there was amply sufficient evidence in the testimony for the Commonwealth to sustain the aforesaid finding of fact of the trial judge, that the confession in question was voluntary, and not involuntary, because extorted by threat or fear of bodily harm to the accused.

The fact that artifice was employed to obtain the presence of the accused at the place at which he made the confession is immaterial. As said in 1 Bish. New Cr. Proc., *supra*, section 1226 (1): "Artifice employed in obtaining a confession does not impair its truthfulness, consequently does not exclude it."

[9] 2. Was there sufficient evidence before the jury to support their finding that the accused at the time he received the stolen property knew it to be stolen?

The question must be answered in the affirmative.

It is earnestly argued in behalf of the accused that there was no evidence before the jury that Layton communicated the fact to the accused that the property was stolen. It is true that there was no evidence that there was any such express communication. But the circumstances testified to by Layton were such that, if Layton is to be believed, the conclusion is inescapable that the accused knew that the property was stolen by Layton, without the need of any express communication from Layton on the subject. According to Layton's testimony, the theft was first suggested by the accused and was carried into effect in pursuance of the request of the accused; and the method which was pursued by the accused in getting possession of, and in paying Layton the price, and the grossly inadequate price, for the property, was such as admits of no other reasonable conclusion than that the accused, from the inception to the conclusion of the transaction, knew the property to be stolen. And the credibility of Layton's testimony was for the jury. Besides,

28

there was the confession of the accused which, in substance, admitted that the testimony of Layton was true.

[10] 3. As the value of the glass received by the accused at no one time amounted to the sum of $50.00, was there sufficient evidence to support the finding of the jury, which was to the effect that the receipts of glass by the accused from Layton was a continuous transaction, done in pursuance of a single impulse of the accused and in execution of a general fraudulent scheme between the accused and Layton, and that the value of all the glass thus received by the accused pursuant to said single impulse and in execution of said general fraudulent scheme amounted to the sum of $50.00 or more, so that the accused was guilty of grand larceny?

The question must be answered in the affirmative.

Upon this question, too, the testimony of Layton concludes against the accused the fact in question. It is true that Layton testifies that in the beginning the accused would specifically designate the number of pieces of glass to be put on his truck on the several occasions of the delivery of the glass to the accused, but Layton also testified that he sometimes put the extra pieces of glass on the truck of the accused without being specifically requested by the accused to do so at the time; that this delivery of glass to the accused by the witness from time to time was made in pursuance of a previous general request from the accused that this be done; and that the accused paid the witness, Layton, for such glass, just as he did for that delivered on the specific request of the accused aforesaid. In view of the long period during which this course of dealing continued and the number of the transactions involved in which it can but be reasonably in-

ferred from the testimony of Layton the deliveries in pursuance of said general request or scheme were made, such testimony amply supported the verdict of the jury upon the aforesaid finding of fact in question.

[11] The questions above disposed of are all of the material questions which are presented for our decision by the assignments of error upon the record before us. There are certain assignments of error to the action of the trial court in admitting certain testimony objected to on behalf of the accused, as appears from the general bill of exceptions which certifies all of the evidence; but there is no separate bill or certificate of exceptions before us showing the rulings complained of in such assignments of error. It is settled that the record before us is not sufficient to bring up such rulings, or any of them, for review. *Myers* v. *Com'th*, 132 Va. 746, 757, 111 S. E. 463, and cases there referred to.

The case must be affirmed.

*Affirmed.*