COMMONWEALTH *vs.* ARTHUR PINA & another.[1]

Plymouth.     April 13, 1973. — July 16, 1973.

Present: ROSE, KEVILLE, & ARMSTRONG, JJ.

*Larceny.*

Testimony by four employees and a customer of a store that, on many occasions over a period of some two and one half years, they had seen the defendants by the same modus operandi shoplift merchandise worth in the aggregate over $100 was sufficient to convict them of theft of merchandise valued at over $100 pursuant to a single and continuing scheme, even if there was no evidence that they shoplifted merchandise worth more than $100 on any one occasion. [412-415]

INDICTMENT found and returned in the Superior Court on October 1, 1968.

The case was heard by *Hale, J.*

The case was submitted on briefs.

*Alexander Whiteside, II,* for the defendants.

*Brian E. Concannon,* Assistant District Attorney, for the Commonwealth.

KEVILLE, J.    After a trial without jury the defendants were found guilty on an indictment charging them with

---

[1] Ralph Andrews.

theft of various items of merchandise of a value of more than $100 from W. T. Grant Company (the store) in Plymouth pursuant to a single scheme[2] on various dates between January 3, 1966 and August 31, 1968. They appeal under G. L. c. 278, §§ 33A-33G. The sole assignment of error argued by the defendants is directed to their motion which we treat as a motion for judgments of acquittal. Their contention is that the evidence was insufficient to warrant convictions. The evidence in its aspect most favorable to the Commonwealth showed the following.

Jeanette Bouchard, a supervisor at the store, saw the defendants on the premises on many occasions during the period covered by the indictment. Each invariably had a raincoat on one shoulder irrespective of the weather. In 1966 she observed the defendants with coats on their shoulders standing at a counter filled with colored sheets. After they left, only three or four sheets remained on the counter. At least six sheets were missing. The defendants walked around the store and left without going through a check-out counter. After talking with the people at the check-out counter, she determined that the sheets had not been purchased. The retail price of each sheet was $3.29. In July 1968 she saw the defendants standing by a counter containing socks. Each one had a coat over his shoulder. She engaged the defendants in conversation; and when a customer came in, the defendant Andrews asked her why she didn't wait on the customer. She went around the corner and continued to watch the defendants. She saw Andrews' "hands shuffling around", and saw him take socks from the counter. She spoke to the defendants. She

---

[2] In argument the defendants appear to ignore the fact that the offense alleged in the indictment is a single crime comprised of successive larcenies pursuant to a single scheme. "The requisite for the finding of a single crime is the 'singleness' of the defendant's intent. In our view 'whoever steals' (G. L. c. 266, § 30) may do so in successive acts impelled by one intent. Were these several acts under our statutory definition indictable as nothing more than separate misdemeanors because of the small value of each taking, then the felony of grand larceny defined in G. L. c. 266, § 30, might on occasion go unpunished. This result would not be reasonable." *Commonwealth* v. *England,* 350 Mass. 83, 87 (1966). "A finding of intent usually is based upon what reasonably is to be inferred from conduct." *Commonwealth* v. *Ronchetti,* 333 Mass. 78, 81 (1955).

felt something soft in the sleeve of Andrews' coat. When she asked him if she could try on the coat, Andrews refused. He then walked away while the defendant Pina and a third person diverted her attention by questioning her about the socks which were in stock. Andrews returned and allowed her to try on the coat which then had a paper inside the sleeve. Andrews previously had been holding the paper in his hand. After the defendants left the store, she went into the men's room and found seven sock hangers in the rubbish and one outside on the floor. Ten pairs of socks, each having a retail value of $1.29, were missing.

Walter H. Brown had been employed by the store as a member of the company training program from July to September 1968. He observed and followed the defendants whenever they entered the store. In July and August of 1968, the defendants were in the store almost every day for periods of one to five hours. Each time they came in they had coats over their shoulders. On one occasion Andrews left the store, returned and handed Brown a portable mixer which he had taken from underneath his coat, saying, "This just goes to show you I can do it if I want to." On another occasion Pina told Brown to stop following him around. He then took a knife from his pocket, opened it and said to Brown, "This is for you if you don't quit bugging."

Sandra Dries, a department manager and cashier at the store, saw the defendants in the store frequently during the period covered by the indictment. On occasion they would spend five hours in the store during the day and then return in the evening. They always had raincoats over their shoulders. Once in 1968 she was putting dresses on a rack while the defendants stood on either side of the rack. After they left, she noticed that six of the dresses were missing. At no time had she left the area where the rack was located. She could see the cash register from her position; and the dresses were not purchased before the defendants left the store. Each dress had a retail price of at least $7.99. At another time in 1968 she saw Pina put a shirt under his coat and leave the store without going through the check-out counter. The retail price of the shirt was at least $3.99. In

June 1968 she saw Andrews leave the store with the sleeve of a three-piece bathing suit protruding from his coat. Later she determined that the bathing suit was missing and that its retail value was $8.99. On another occasion she saw the defendants standing at a counter which held several electrical appliances. After they had left, almost nothing remained on the counter; an iron, an electric percolator, and an electric can opener were missing. The value of each of these items was between $8.99 and $9.99.

Leroy E. Bumpus, an assistant manager of the store, often saw the defendants during the period covered by the indictment with jackets or coats thrown over their shoulders. Several times he saw them pass counters filled with electrical appliances. After they had passed by, two or three articles would usually be missing. The value of these articles ranged from $9.99 to about $12.99. In August 1968 he observed them put several records under their coats and leave after lingering briefly within the store. The records had a retail price of at least $2.87 each. On another occasion he saw Pina take a portable record player and radio combination, put it under his coat and leave without going through the check-out counter.

Esther J. Ruprecht, a customer of the store, in July 1968 saw the defendants standing at a counter where they appeared to be filling a bag with drapes. The bag was hidden beneath a coat. At least six pairs of drapes were taken. Their price was at least $7.99 a pair.

In reviewing a claim of insufficient evidence, our function is not to weigh or resolve the question of the credibility of witnesses but rather to look to the evidence and the reasonable inferences therefrom which support the judgment of the trial court. If from that viewpoint there is evidence of probative value from which the trier of fact could find that the defendants were guilty beyond a reasonable doubt, the conviction will be affirmed. *Commonwealth* v. *Schnackenberg,* 356 Mass. 65, 73-74 (1969). *Commonwealth* v. *Albert,* 310 Mass. 811, 816-817 (1942). *Commonwealth* v. *Murphy, ante,* 71, 75 (1973).

No purpose would be served by a recitation of the

arguments advanced by the defendants here in support of their claim of insufficiency of evidence. We conclude that there was ample evidence from which the judge could have found not only that the successive larcenies were committed by the defendants pursuant to a single and continuing scheme within the period set forth in the indictment, but also that the thefts exceeded the sum of $100 in the aggregate.

*Judgments affirmed.*