COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Haley and Powell
Argued at Alexandria, Virginia


GREGORY BRYCE TANNER

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2672-08-4              JUDGE JAMES W. HALEY, JR.
                                                       JANUARY 19, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
James F. Almand, Judge

        Sara M. Bieker (Office of the Public Defender, on brief), for
        appellant.

        Craig W. Stallard, Assistant Attorney General (William C. Mims,
        Attorney General, on brief), for appellee.


I.  INTRODUCTION

Appealing his conviction for grand larceny in violation of Code § 18.2-95, Gregory

Bryce Tanner argues the Commonwealth failed to prove he acted under a single intent when

committing his two thefts and that without such proof the Commonwealth could not employ the

single larceny doctrine to combine the value of the thefts, which individually were worth less

than the amount necessary for grand larceny, into an amount exceeding the threshold for grand

larceny.  We hold the fact finder could conclude Tanner acted under a single intent and so affirm

his conviction.

II.  BACKGROUND

On February 4, 2008, at 11:09 a.m., two security employees of Nordstrom's Department

Store in Arlington, Michael McNeil and Juan Ponton, saw Tanner in the boy's department on the

[*] Pursuant to Code §17.1-413, this opinion is not designated for publication.

third floor of the store.  McNeil and Ponton observed Tanner through a closed-circuit television system, but McNeil soon went to watch Tanner in person.  According to McNeil, Tanner paced along a wall, with his coat draped over his left shoulder.  Against the wall were boys' suits and blazers, which were for sale.  McNeil saw that there were ten blazers against the wall.  Tanner was picking up blazers, observing them, and placing them back on the rack.  After examining one blazer, Tanner leaned over as if to return the blazer to the rack.  McNeil saw Tanner moving something under his coat before walking toward the bathroom in the store's café section.  After Tanner moved away from the rack, McNeil counted only nine blazers.  Soon after Tanner left the bathroom, he took the escalator down to the second floor of the store.

At approximately 11:25 a.m., Tanner exited Nordstrom's through the second floor doorway that connects the store to the other stores in a large shopping mall.  Both McNeil and Ponton stated that Tanner did not stop to pay for the blazer before leaving.  Tanner returned twenty to thirty minutes after he left, then carrying a Macy's shopping bag.

This time Tanner went to the men's department on the second floor and was seen near a rack of men's pants.  According to McNeil, Tanner picked up two pairs of pants, each of them attached to hangers, removed the hanger from one pair, and placed both over one of his arms, so that the two pairs resembled a single pair of pants on a single hanger.  A salesperson escorted Tanner into a fitting room, where Tanner closed the door and then reopened it, apparently requesting that the salesperson replace one of the pairs of pants with a similar pair of a slightly different size.  The salesperson walked back to the rack of pants and replaced the pair Tanner had given him with a new pair.  After Tanner examined the new pair, he gave it back to the salesperson, who again replaced the pants on the rack and retrieved still another pair to give to Tanner inside the fitting room.  After the second exchange, Tanner walked outside of the fitting room, wearing a pair of pants, and examined himself in a mirror.  He then returned to the fitting

room and came out again, handing a single pair of pants back to the salesperson. While Tanner was speaking to the salesperson, McNeil went inside the fitting room and confirmed that Tanner had not left any of the pairs of pants inside.

Tanner again walked out of the store without attempting to make a purchase, but this time McNeil intercepted him and found the missing pants rolled up in the sleeve of Tanner's coat and the boy's blazer inside the Macy's shopping bag that Tanner carried. McNeil testified that price tags on the items indicated a value of $135 for the pants and $115 for the blazer.

Tanner was indicted for grand larceny. He was tried before a jury on July 29, 2008.

After the Commonwealth rested, Tanner made a motion to strike, arguing that there was insufficient evidence for a grand larceny conviction; instead the evidence proved two separate acts of petit larceny. The court denied the motion, stating "a reasonable fact finder could conclude that there was a single larcenous intent." Tanner renewed this motion at the close of all the evidence, which the court again denied. The charging instruction (Instruction No. 4) informed the jury that they could convict only if the Commonwealth proved the following four elements beyond a reasonable doubt:

> 1) That the defendant took clothing belonging to Nordstrom and carried it away; and
>
> 2) That the taking was against the will and without the consent of the owner; and
>
> 3) That the taking was with the intent to steal; and
>
> 4) That the property taken was worth $200 or more.

Tanner also requested, and the Court granted, Instruction D, explaining the legal elements of the common law single larceny doctrine. Instruction D reads:

> The Commonwealth must also prove beyond a reasonable doubt the following elements:
>
> The several acts were done:

5)    pursuant to a single impulse; and

6)    in execution of a general fraudulent scheme.

Defense counsel argued to the jury that the Commonwealth failed to prove beyond a reasonable doubt elements five and six.  The jury convicted Tanner of grand larceny, and this appeal followed.

### III.  ANALYSIS

On appeal, Tanner's sole argument is that the Commonwealth failed to prove he acted under a single intent when committing the two thefts and that without such proof the Commonwealth could not use the single larceny doctrine to combine the value of the thefts into an amount exceeding the threshold for grand larceny.[1]  For the following reasons, we affirm.

Larceny is a common law crime in Virginia.  Britt v. Commonwealth, 276 Va. 569, 574, 667 S.E.2d 763, 765 (2008).  It consists of "the wrongful or fraudulent taking of another's property without his permission and with the intent to deprive the owner of that property permanently."  Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763 (2001). "Under Code § 18.2-95, grand larceny includes the taking, not from the person of another, of goods having a value of $200 or more."  Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998).  Proof that the goods stolen had a value meeting the statutory requirement represents an essential element of grand larceny that the prosecution must prove beyond a reasonable doubt.  Walls v. Commonwealth, 248 Va. 480, 481, 450 S.E.2d 363, 364 (1994).  In this case, the prosecution argued the items Tanner stole exceeded the $200 threshold by virtue of aggregation under the single larceny doctrine.

---

[1] Tanner does not argue on appeal the jury could not find he acted under a general fraudulent scheme.

- 4 -

The single larceny doctrine represents part of the common law concept of larceny.

Alexander v. Commonwealth, 90 Va. 809, 810, 20 S.E. 782, 783 (1894).  The law in this regard

has been stated as follows:

> Broadly stated, the general rule is that the taking of
> property at different times, though from the same place and the
> same owner, will constitute separate offenses; and no aggregation
> of successive petit larcenies, not constituting parts of a continuous
> transaction, but each complete and distinct itself, can be combined
> in one prosecution so as to make a case of grand larceny.
>
> But a series of larcenous acts, regardless of the amount and
> value of the separate parcels or articles taken, and regardless of the
> time occupied in the performance, may and will constitute, in
> contemplation of law, a single larceny, provided the several acts
> are done pursuant to a single impulse and in execution of a general
> fraudulent scheme.

West v. Commonwealth, 125 Va. 747, 754, 99 S.E. 654, 656 (1919) (citations omitted); see also

Peter G. Guthrie, Annotation, Series of Takings Over a Period of Time as Involving Single or

Separate Larcenies, 53 A.L.R.3d 398 (1973) (discussing thoroughly the single larceny doctrine).

In order for the single larceny doctrine to apply, the items stolen must be taken from the

same general place, meaning "the 'same table,' or same room, or 'same shop,' as Lord Hale first

observed."  Richardson v. Commonwealth, 25 Va. App. 491, 497, 489 S.E.2d 697, 700 (1997)

(*en banc*).  The various stolen items may belong to different persons.  Id.  On the other hand, "a

series of thefts committed in rapid succession pursuant to a general scheme to steal from distinct

locations, such as different shops, stores, or buildings, will constitute separate offenses."  Id.

Thus, "[a] single, general scheme to commit a series of larcenies at different times and locations

does not transform multiple separate and discrete crimes into a single offense."  Id. at 498, 489

S.E.2d at 700-01.

Determining whether particular larcenies from such a single location were committed

"pursuant to a single impulse and in execution of a general fraudulent scheme" so as to qualify as

a single larceny involves consideration of a number of factors.  A court should review "(1) the location of the items taken, (2) the lapse of time between the takings, (3) the general and specific intent of the taker, (4) the number of owners of the items taken and (5) whether intervening events occurred between the takings."  Acey v. Commonwealth, 29 Va. App. 240, 247, 511 S.E.2d 429, 432 (1999).  The most important factor is the intent of the defendant.  Richardson, 25 Va. App. at 497, 489 S.E.2d at 700.  In this context, an intent to steal means the same as an impulse to steal.[2]  See id. at 498, 489 S.E.2d at 701 (referring to "intents or impulses to steal"); see also Millard v. Commonwealth, 34 Va. App. 202, 207, 539 S.E.2d 84, 86 (2000) (noting that "multiple unlawful takings constitute separate larcenies if the thief acted upon a separate intent or impulse for each theft").  To a significant degree, the other four Acey factors serve as evidence of the defendant's intent.  We also believe evidence concerning a defendant's methodology in committing the thefts has relevance to his intent.  Cf. Brown v. Commonwealth, 238 Va. 213, 221, 381 S.E.2d 225, 230 (1989) (stating that "intent is the will to use a particular means or method to achieve a certain result").

We have noted that at common law the main purpose of the single larceny doctrine was to protect the defendant by prohibiting the prosecution from imposing multiple punishments for what was really one larceny.  Richardson, 25 Va. App. at 496, 489 S.E.2d at 700.  In this context, the single larceny doctrine operates as a "humane rule" since "[i]f each article stolen were of a value sufficient to make the crime a felony, and a separate charge could be filed as to each, a defendant, if convicted, might be sentenced to the penitentiary for the rest of his life."  Sweek v. People, 277 P. 1, 3 (Colo. 1929).  Yet the single larceny doctrine also permits the prosecution to aggregate multiple petit larcenies into an amount sufficient for grand larceny.  See West, 125 Va.

---

[2] Numerous courts have spoken of the importance of a defendant's "single intent."  The courts of New Mexico actually refer to the single larceny doctrine as the "single-intent doctrine."  See State v. Borja-Guzman, 912 P.2d 277, 283 (N.M. Ct. App. 1996).

at 754-56, 99 S.E. at 656. "If this were not so, a crime of grand larceny would go unpunished and a felon escape because the law classified him only as a petty thief." People v. Cox, 36 N.E.2d 84, 87 (N.Y. 1941); see also Commonwealth v. England, 213 N.E.2d 222, 225 (Mass. 1966) ("Were these several acts . . . indictable as nothing more than separate misdemeanors because of the small value of each taking, then the felony of grand larceny . . . might on occasion go unpunished. This result would not be reasonable.").

Thus, both the defense and the prosecution may utilize the single larceny doctrine to their advantage. The defense may seek to apply it to avoid multiple convictions and punishments for what was really one offense, and the prosecution may request to use it to transform multiple petit larcenies into grand larceny. Obviously, each side also has an interest in defeating the application of the single larceny doctrine where its use would aid the other side.[3]

Regardless of who seeks to employ the single larceny doctrine, the evidence must suffice for the fact finder to determine the prosecution's theory of the case proven beyond a reasonable doubt. In Richardson, we noted that when "the application and enforcement of the criminal law is at issue, any ambiguity shall be resolved against the Commonwealth and in favor of the accused." 25 Va. App. at 496, 489 S.E.2d at 700. We later stated that on the facts of Richardson, where the prosecution charged separate larcenies, "[t]he evidence must be sufficient for the fact finder to conclude beyond a reasonable doubt that the thief formed separate and distinct intents or impulses to steal in order to constitute separate larcenies." Id. at 498, 489 S.E.2d at 701.[4] This prosecutorial burden, likewise, applies where the prosecution seeks to

---

[3] Strictly speaking, a finding that multiple thefts should not be considered together does not represent an application of the single larceny doctrine, but a determination that the doctrine does not apply. State v. White, 702 A.2d 1263, 1269 n.5 (Md. 1997).

[4] While Richardson supports the notion that the prosecution must prove its theory beyond a reasonable doubt, we wish to clarify some confusion that may come from its language. Between stating that the primary purpose of the single larceny doctrine is to prevent imposing

- 7 -

prove a single larceny. Kelley v. State, 939 A.2d 149, 156 (Md. 2008) ("The question, then, is whether the State has sufficiently established beyond a reasonable doubt that there was, or, in this case, was *not*, a single larcenous scheme or course of conduct."); Guthrie, supra at 402 (stating that "the prosecution, before proceeding on the theory that grand larceny had been committed where there had been a series of takings, has the burden of showing beyond a reasonable doubt that the defendant was acting pursuant to a general plan or design").

While the principles of the single larceny doctrine are easy to understand, their application "becomes problematic when applied to the infinite variety of circumstances that can arise." Richardson, 25 Va. App. at 495, 489 S.E.2d at 699. As noted above, the key factor is the defendant's intent. In the larceny context, as in others, "[i]ntent may, and often must, be inferred from the facts and circumstances of the case, including the actions of the accused and any statements made by him." Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000). Circumstantial evidence may suffice to prove intent. Coles v. Commonwealth, 270 Va. 585, 590, 621 S.E.2d 109, 111 (2005). Thus, as we stated in another single larceny case, since the

_____

multiple punishments on defendants and that the law resolves ambiguities in favor of defendants (both principles kind to defendants), the Court explained that "[t]hus, in West the defendant could not be found guilty of separate larcenies . . . where the evidence failed to prove whether she had taken the items on one occasion or on separate occasions." Id. at 496, 489 S.E.2d at 700. However, in West, the defendant actually sought to avoid a single conviction for grand larceny, instead asserting she committed petit larcenies. 125 Va. at 753, 99 S.E. at 656. The Court's decision upholding the single grand larceny conviction favored the Commonwealth, not the defendant, as Richardson seems to state. The Richardson Court also stated: "Unless the evidence proves that two or more separate and discrete thefts occurred at separate times which were not part of the same larcenous impulse, then the thefts from the same room are but a single larceny." 25 Va. App. at 497, 489 S.E.2d at 700. The Court later remarked: "The evidence must be sufficient for the fact finder to conclude beyond a reasonable doubt that the thief formed separate and distinct intents or impulses to steal in order to constitute separate larcenies." Id. at 498, 489 S.E.2d at 701. While these represent correct statements in cases like Richardson where the prosecution seeks to prove separate larcenies, they do not apply where, as here, the prosecution supports a single larceny theory. In short, the prosecution always bears the burden of proof on its theory of the case; finding a single larceny does not represent a default rule for every case, as some language in Richardson may suggest.

analysis of intent "turns on the particular facts of a case, we will affirm the trial court's determination unless plainly wrong or unless the record lacks any evidence to support that determination." Bragg v. Commonwealth, 42 Va. App. 607, 612, 593 S.E.2d 558, 560 (2004).

The question of whether a defendant possessed the requisite intent normally rests with the finder of fact. Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). Our standard of review of its decision is well established.

In reviewing a fact finder's decision, we "consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party below." Walker v. Commonwealth, 272 Va. 511, 513, 636 S.E.2d 476, 477 (2006). The issue is simply "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We do not "reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), for appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).

The Court employs this deferential standard of review "not only to the historical facts themselves, but the inferences from those facts as well." Cooper v. Commonwealth, 54 Va. App. 558, 572, 680 S.E.2d 361, 368 (2009) (internal quotation marks and citation omitted). "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991). Thus, a jury may "draw reasonable inferences from basic facts to ultimate facts," Noakes v. Commonwealth, 54 Va. App. 577, 585, 681 S.E.2d 48, 51 (2009) (*en banc*) (internal quotation marks and citation omitted), unless doing so would push "into the realm of *non*

*sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (internal quotation marks and citation omitted).

Where the Commonwealth relies on circumstantial evidence to prove a defendant's intent, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 400 (2009) (internal quotation marks and citation omitted). Nonetheless, "the reasonable-hypothesis principle is not a discrete rule unto itself." Haskins, 44 Va. App. at 8, 602 S.E.2d at 405. "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).

Furthermore, the question of "[w]hether the hypothesis of innocence is reasonable is itself a 'question of fact,' subject to deferential appellate review." James v. Commonwealth, 53 Va. App. 671, 681, 674 S.E.2d 571, 576 (2009). Thus, consideration of whether a reasonable jury could have excluded a hypothesis of innocence as unreasonable is viewed in the light most favorable to the Commonwealth. Hudson, 265 Va. at 514, 578 S.E.2d at 786. The simple fact that a defendant offers an alternative theory does not mean the Commonwealth has failed to prove guilt beyond a reasonable doubt. Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964). While the jury may not arbitrarily choose a theory incriminating the defendant, Corbett v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969), we may find a jury's decision to convict arbitrary only where no reasonable jury could reach that conclusion, Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004).

Prior cases provide guidance in determining whether the fact finder here could determine Tanner acted with a single intent.[5]

In Omohundro v. Commonwealth, 138 Va. 854, 856, 121 S.E. 908 (1924), the defendant repeatedly arranged to purchase glass stolen from a supply company during an eighteen-month period. The defendant, who often legitimately bought glass from the company, conspired with an employee of the company to have the employee include extra glass with the defendant's orders, without an accounting for the extra glass. Id. at 856-57, 121 S.E. at 908-09. The defendant would then pay the employee a portion of the value of the stolen glass. Id. at 857, 121 S.E. at 909. While each of these transactions concerned little money, when aggregated the value of the stolen glass far exceeded the value necessary for grand larceny. Id. at 856-57, 121 S.E. at 908-09. The defendant claimed the evidence was insufficient to support a grand larceny conviction because it failed to reveal a single intent and a general scheme. Id. at 866, 121 S.E. at 911. Yet the Court held that given the continuous nature of the thefts, the evidence sufficed to permit aggregation under the single larceny doctrine. Id. at 866-67, 121 S.E. at 911-12. The Court held the evidence "amply supported the verdict of the jury" that the defendant acted "in pursuance of a single impulse . . . and in execution of a general fraudulent scheme." Id.

In West, the defendant was alleged to have stolen items, which when aggregated exceeded the threshold for grand larceny, within a three-day period from a home where she provided household services. 125 Va. at 752-53, 99 S.E. at 655-56. The defendant's employer had left on a trip during the relevant three-day period. Id. at 753, 99 S.E. at 656. The defendant argued the evidence was insufficient to convict her of grand larceny since it failed to show whether she had ever taken the items in a single group with a value over the amount necessary

---

[5] As stated earlier, the single larceny doctrine has a common law foundation in Virginia. For a summary of early English common law cases on the single larceny doctrine, see Woods v. People, 78 N.E. 607, 608-09 (Ill. 1906).

for grand larceny. Id. The Court affirmed the conviction, holding that whether the defendant took the items "in parcels or as a whole, she was simply carrying out a general purpose to steal them all." Id. at 755, 99 S.E. at 656. The evidence sufficed to demonstrate the defendant acted under a single intent. Id. at 754, 99 S.E. at 656.

This Court considered another relevant situation in Jha v. Commonwealth, 18 Va. App. 349, 444 S.E.2d 258 (1994). There the defendant incurred three hundred dollars in telephone bills for eight calls after illegally tapping into the telephone box of a store. Id. at 352, 444 S.E.2d at 259. The defendant argued the evidence was insufficient to meet the required statutory value since no single call was shown to have a sufficient value. Id. at 354, 444 S.E.2d at 261. Citing the single larceny doctrine in West, the Court disagreed, holding that as the calls were all made within around an hour of each other, "a finding by the fact finder that the value of the calls . . . [met the statutory requirement] is supported by the evidence." Id. at 355, 444 S.E.2d at 261.

The above Virginia cases show a single larceny may occur over a period of time and that the question of whether the larcenous acts involved were single or separate normally resides with the fact finder. Cases from other jurisdictions with facts similar to those involved here further illuminate the resolution of this appeal.

The court affirmed a conviction under facts similar to those here in State v. Wiley, 442 S.W.2d 1 (Mo. 1969). The defendant and his wife went to the men's department in a Macy's store and stole two pairs of pants by placing them in the wife's handbag. Id. at 2-3. They then left the store. Id. at 3. Five to ten minutes later, the couple returned to Macy's and proceeded to the ladies' department. Id. There they stole a dress by again putting it in the wife's handbag. Id. When combined, the value of the pants and the dress exceeded the amount necessary for grand larceny. Id. Although the defendant argued the evidence disclosed two petit larcenies, the court held the facts revealed "one continuous transaction . . . arising out of a series of events

interconnected in both time and place." Id. Thus, combining the value of the property taken in the two thefts was proper. Id.

The case of State v. Hall, 207 P. 773 (Kan. 1922), also has noteworthy importance. There the defendant was charged with stealing items from two different floors of a department store during a ten-minute period. Id. at 774. The defendant claimed the evidence revealed two distinct thefts. Id. Citing our Supreme Court's West decision, among others, the court held the evidence supported the jury verdict of a single larceny. Id.

In Commonwealth v. Pina, 298 N.E.2d 895, 895-96 (Mass. App. Ct. 1973), the defendants repeatedly stole items from a retail store over a two and a half year period. The defendants would enter the store wearing raincoats, place items under the coats, and then leave the store. Id. at 896-97. Items taken included such various things as socks, dresses, records, and electrical household items. Id. The defendants were also aware that store personnel were following their movements. Id. at 896. At one point, one of the defendants actually threatened an employee with a knife, instructing the employee to cease following him. Id. The total value of the taken items exceeded the statutory threshold for grand larceny. Id. at 897. In reviewing the sufficiency of the evidence, the court found the fact finder could discern a single larceny. Id. In a footnote, the court noted: "The requisite for the finding of a single crime is the singleness of the defendant's intent. In our view whoever steals may do so in successive acts impelled by one intent." Id. at 895 n.2 (internal quotation marks and citations omitted).

Simply stated, courts have consistently held in situations similar to this case that the issue of whether the defendant acted with a single intent rests with the fact finder.[6] The limited

---

[6] In People v. Daghita, 92 N.Y.S.2d 799, 800-01 (N.Y. App. Div. 1949), the defendant repeatedly stole items from a department store over several months. A jury convicted him of grand larceny based on the aggregate value of the items. Id. Like this case, the defendant maintained he committed a series of petit larcenies. Id. at 801. In holding the question of whether the defendant acted with a single intent rested with the jury, the court explained:

appellate supervision of such a finding, as detailed above, gives the jury's decision the highest

deference.  Waller v. Commonwealth, 52 Va. App. 571, 576, 665 S.E.2d 848, 851 (2008).

In light of our standard of review and the above case law, we conclude a reasonable jury

could find Tanner acted with a single intent.

First, the factors enumerated in Acey support finding a single intent (intent being the

third and most important factor).  As to the first factor, Tanner took all the items from the same

store.  While they were located on different floors, it apparently did not take much time to move

between the sections.  Additionally, the Hall court affirmed a conviction where the defendant

stole from different floors of a store and the Wiley court affirmed a conviction where the thefts

involved different departments of a store.  The Pina defendants stole a wide variety of items.

Concerning the second factor, only a brief time separated the thefts.  Tanner re-entered the store

twenty to thirty minutes after leaving.  Regarding the fourth factor, the store owned all the items.

As to the fifth factor, the only intervening event between the takings was Tanner's short

departure from the store, which he used to conceal his first theft.

---

Whether there was unitary purpose in these thefts, so that in
totality they may be evaluated together as grand larceny, rather
than as components and therefore as petit larcenies, is finally on
this record a question not of law, but of fact.

*     *     *     *     *     *     *

What is "separate," what is "single," what is "sustained,"
what is "independent," are all jury questions both by legal tradition
and by necessity.  No judge could apply these definitions rigidly as
a matter of law, and the judicial supervision of the verdict is
limited to seeing to it that there is factual foundation upon which
reasonable men might reach the conclusion that these conditions
attached to the series of acts under consideration.

Id. at 801-02.

Second, Tanner's methodology evidences a single intent. On the first occasion, Tanner examined a number of boys' blazers before finally slipping one in his coat. On the second occasion, Tanner examined multiple pairs of pants before finally leaving with a pair of pants rolled up the sleeve of his coat. The jury could discern Tanner feigned interest both times in the belief that his apparent interest in purchasing items would mask his true intent to steal them and that this methodology disclosed a single intent. The jury could also view the use of the coat to conceal the property during each theft as evidence of a single intent.

Tanner's methodology in leaving the store also indicates a single intent. Tanner's departure after each theft reveals an intent to steal in small quantities, most likely in the belief such stealing would not arouse attention. When Tanner returned to the store after the first taking, he carried the blazer in a Macy's bag. When considered that Tanner used his coat to conceal the property on both occasions, the jury could determine Tanner temporarily left the store, at least in part, to free his coat as a tool for additional takings. Had a security person not stopped him after the second theft, he may have intended to add the pants to the Macy's bag, or possibly place them in a second bag.

Based on these factors, the jury could conclude Tanner acted with a single intent and find any other theories unreasonable. Indeed, the above relevant cases affirmed convictions under facts similar to this case or under more extreme circumstances. The jury's finding was not plainly contrary to the evidence.

Accordingly, the judgment of the trial court in this regard is affirmed.

<u>Affirmed.</u>