## Wytheville.

## WEST V. COMMONWEALTH.

### June 12, 1919.

1. VENUE—*State Must Prove Venue.*—In a prosecution for larceny the Commonwealth is as much bound to prove the venue as to prove the larceny itself.

2. VENUE—*Proof — Circumstantial Evidence — Presumption.* — The evidence to prove venue may be either direct or circumstantial. If the evidence raises a violent presumption that the offense was committed in the county mentioned in the indictment, it will be sufficient.

3. VENUE — *Sufficiency of Proof — Case at Bar.* — An indictment charged accused with grand larceny in the city of Petersburg. It appeared from the evidence that the owner of the property stolen called in the "local police officers," who proceeded to make an investigation and arrest, which resulted in the indictment and trial of the accused in Petersburg. The "local police officers" were unquestionably Petersburg officers, therefore there was small room to doubt that the owner of the property telephoned to them, and that they responded to her call, because her residence was in the city and therefore within their jurisdiction.

   *Held:* That this circumstance, together with other evidence in the case, was sufficient to establish the venue in Petersburg.

4. VENUE—*Proof of—Inquiry Before Verdict.*—It seldom happens that there is any real merit in an exception based upon a failure to prove venue, unless the question has been developed and made the subject of serious inquiry before verdict. Criminals are supposed to be, and usually are, indicted where they have committed the crime. The necessity of proving the locality is known to practically every tyro in the criminal practice.

5. VENUE—*Proof of—Inquiry Before Verdict—Presumption in Favor of Ruling of Lower Court—Case at Bar.*—The record in the instant case showed that the court, counsel, jurors, and witnesses must necessarily have been familiar with the location of the home of the owner of the stolen property in the city where the venue was laid. No question was raised or hinted at as to the local jurisdiction of the court, until after the ver-

dict was rendered. A motion was then made for a new trial on the ground that the venue had not been proved, and this motion was promptly overruled by the trial court.

*Held:* That the usual presumption favoring the correctness of a judgment of a trial court applied to the action of the court in overruling the motion. Moreover, the facts and circumstances appearing in the evidence raised a presumption that the house in question was within the local jurisdiction of the court.

6. LARCENY—*Grand Larceny—Combination of Successive Larcenies.*—The general rule is that the taking of property at different times, though from the same place and the same owner, will constitute separate offenses; and no aggregation of successive petit larcenies, not constituting parts of a continuous transaction, but each complete and distinct in itself, can be combined in one prosecution, so as to make a case of grand larceny.

7. LARCENY—*Grand Larceny—Combination of Successive Larcenies.*—A series of larcenous acts, regardless of the amount and value of the separate parcels or articles taken, and regardless of the time occupied in the performance, may and will constitute, in contemplation of law, a single larceny, provided the several acts are done pursuant to a single impulse and in execution of a general fraudulent scheme.

8. LARCENY—*Grand Larceny—Series of Larcenies—Instructions—Evidence to Support.*—On an indictment for grand larceny, the trial court after instructing the jury, at the request of the accused, that if they believed that the stolen articles were taken at substantially different times, the burden was upon the Commonwealth to prove that the defendant took goods of the value of $50 or more at one time, added "unless they believe that the accused, in pursuance of a single impulse, stole the articles mentioned in the indictment so as to form a continuous action; then in that case the accused may be found guilty of grand larceny." It was claimed by accused that there was no evidence upon which to base this addition to the instruction. The proof plainly tended to show that the articles were stolen, that they disappeared during a brief absence from home of the owner.

*Held:* That this was enough to warrant the inference that accused took the articles under a single impulse, and that, whether she removed them in parcels or as a whole, she was simply carrying out a general purpose to steal them all. Moreover, except for accused's own testimony, contradicted by the owner of the property, in which she claimed that some of the goods were given, or lent, or sold to her, there was no proof that she did in fact carry them off at substantially different times.

9. LARCENY—*Possession of the Stolen Property—Burden of Proof.*—The mysterious disappearance of articles alleged to have been

stolen was evidence that they had been taken with criminal intent. Their possession by the accused indicated that she had stolen them all, and the burden of showing how she got them was thereby shifted to her.

10. INSTRUCTIONS—*Two Theories in a Single Instruction.*—It was objected by accused in the instant case that the instruction referred to in the eighth syllabus was contradictory, unintelligible and misleading, in that it presented two theories in a single instruction.

   *Held:* That there was no merit in such objection. A far more common and meritorious proposition, and one the disregard of which has frequently resulted in reversals, is that the failure to notice in the instructions on one side a theory relied upon and embodied in the instructions for the other, results in apparent contradiction, tending to confuse and mislead the jury.

11. LARCENY—*Grand Larceny—Instructions—Value of Property.*— Where the jury in the first branch of a charge were told that accused could not be convicted of grand larceny unless she had taken goods of the value of $50 or more at one time, an amendment, following as a part of the same sentence, merely explaining to the jury the circumstances under which they might regard the taking of the goods in parcels at different times as equivalent in law to taking them at one time, is not open to the objection that it omitted any reference to the value of the property.

Error to a judgment of the Hustings Court of city of Petersburg.

*Affirmed.*

The opinion states the case.

*H. M. Smith, Jr.,* and *Gilliam & Gilliam,* for the plaintiff in error.

*Jno. R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *F. B. Richardson,* for the Commonwealth.

KELLY, J., delivered the opinion of the court.

Frances West obtained this writ of error to a judgment

sentencing her to a term of three years in the penitentiary for grand larceny.

[1, 2] 1. The indictment charged that the crime was committed in the city of Petersburg, and the first assignment of error is that there was no proof of this fact.

Unquestionably the Commonwealth was as much bound to prove the venue as to prove the larceny itself. *Fitch's Case*, 92 Va. 824, 24 S. E. 272; *Anderson's Case*, 100 Va. 864, 42 S. E. 865; *Byrd's Case*, 124 Va. 833, 98 S. E. 632. The evidence to prove it, however, may be either direct or circumstantial. In *Richardson's Case*, 80 Va. 124, this court apparently approved the rule that "if the evidence raises a violent presumption that the offense was committed in the county mentioned in the indictment, it will be sufficient." In *Byrd's Case, supra*, we said: "The failure clearly to prove venue is usually due to inadvertence, flowing naturally from the familiarity of court, counsel, witnesses and jurors with the locality of the crime, and appellate courts will generally and properly lay hold of and accept as sufficient any evidence in the case, direct or otherwise, from which the fact may be inferred." See also 1 Whart. Cr. Ev. (10th ed.), sec. 108; 12 Cyc. 484, and cases cited in note 5; *State v. Hobbs*, 37 W. Va. 812, 816, 17 S. E. 380, and authorities cited.

[3] In the case at bar there is no direct proof that the crime was committed at Petersburg, but the following circumstances fully warrant the inference that it did take place there: The indictment charged that the property was stolen in the city of Petersburg, and belonged either to E. A. Robertson or to his wife. The case was tried at Petersburg, and the witness Worrell testified that he was employed as a detective with "the local police force," went with Wilkerson, another police officer, to investigate the case, found the stolen property at the prisoner's home, then went to the home of Mrs. Robertson and brought her to

the prisoner's home to identify the property. Wilkerson testified "that he was employed as a detective with the local police department, and went to see Mrs. E. A. Robertson in response to a telephone call from her advising him that certain articles were missing from her home, and went with the officer, Worrell, to the home of Frances West and found the alleged stolen articles there; that he remained at her home while Officer Worrell went to get Mrs. Robertson to identify the various stolen articles." C. E. Perkinson testified "that he was employed as a detective with the local police department, and assisted in the investigation of the West case." E. A. Robertson and wife testified that the property was stolen from their home on Sycamore street. It thus appeared that Mrs. Robertson, from her home on Sycamore street, where the offense was committed, called in the "local police officers," who proceeded to make an investigation and arrest, which resulted in the indictment and trial of the accused in Petersburg. The "local police officers" were unquestionably Petersburg officers, and there is small room for doubt that Mrs. Robertson telephoned to them and that they responded to her call because her residence was in the city, and therefore within their jurisdiction.

The case of *State* v. *Hobbs, supra,* is very much in point. There the proof was that the homicide had been committed at the house of the prisoner, Hobbs, but no witness said that this house was within the limits of Pleasants county, as averred in the indictment. It did appear, however, that the county coroner was notified that there was a dead body "within the county" (the name of the county not being given), and that he proceeded to the Hobbs house and held an inquest over the body. This was the principal circumstance upon which the Commonwealth relied to support its contention that the venue had been sufficiently proved, and the court sustained the contention.

[4, 5]   It seldom happens that there is any real merit in an exception based upon a failure to prove venue, unless the question has been developed and made the subject of serious inquiry before verdict. Criminals are supposed to be and usually are indicted where they have committed the crime. The necessity of proving the locality is known to practically every tyro in the criminal practice. The record in this case shows that the court, counsel, jurors and witnesses must necessarily have been familiar with the location of the Robertson home on Sycamore street. No question was raised or hinted at as to the local jurisdiction of the court, until after the verdict was rendered. A motion was then made for a new trial on the ground that the venue had not been proved, and this motion was promptly overruled by a local judge of known experience and ability.

The action of the court in overruling the motion, based on the view that the venue had been sufficiently established, comes to us not only with the usual presumption favoring the correctness of the judgment of a trial court, but upon the facts and circumstances appearing in the evidence and detailed above, which of themselves raise a violent presumption that the Robertson house was within the local jurisdiction of the court, and we do not feel warranted in reversing the judgment upon this point.

2. In disposing of the second assignment of error, it will be in order to set out somewhat in detail the pertinent facts in connection with the crime itself. The indictment charged the larceny by Frances West of various articles of wearing apparel and table-ware of the aggregate value of $286. The accused had been employed as cook and housegirl in the Robertson home for several months. Shortly after the larceny is supposed to have been committed, she became ill, went to a hospital for treatment, and thereafter did not return to her former position. About that time Mrs. Robertson began to miss dishes and other small articles, and

became suspicious on that account, she opened what she called her "treasure trunk," which she kept in the kitchen, and in which she had stored the most valuable of the stolen property. The contents of this trunk had disappeared. A search was made and they were found in the possession of the accused. Her explanation was unsatisfactory in itself, and was contradicted by Mrs. Robertson. The evidence is conflicting as to actual value of the property stolen, but it was quite sufficient on the part of the Commonwealth to establish the value of more than $50, the amount necessary to constitute grand larceny. This is true as to the contents of the "treasure trunk" alone, regardless of what the other articles were worth.

A short time before the accused gave up her position in the house, Mrs. Robertson was away from home on a visit of about three days. She could not tell when the stolen articles were taken, but supposed it was while she was absent on that visit, because she could not see how the accused could have taken them without her knowledge when she was at home.

Upon evidence as substantially outlined above, the accused asked for an instruction, which the court amended, and its action in refusing to give the same in its original form and in giving it as amended is assigned as error. The instruction appears below, the amendment being indicated by italics:

"That grand larceny is the taking of goods of the value of $50 or more; and, if the jury believe that the alleged stolen articles were taken at substantially different times, then the burden is upon the Commonwealth to prove, beyond a reasonable doubt, that the defendant took goods of the value of $50 or more at one time, or else the accused cannot be convicted of grand larceny, *unless they believe that the accused, in pursuance of a single impulse, stole the articles mentioned in the indictment so as to form a continuous*

*action, then in that case the accused may be found guilty of grand larceny."*

[6]   Broadly stated, the general rule is that the taking of property at different times, though from the same place and the same owner, will constitute separate offenses; and no aggregation of successive petit larcenies, not constitut-ing parts of a continuous transaction, but each complete and distinct in itself, can be combined in one prosecution so as to make a case of grand larceny. *Monounghan* v. *People,* 24 Ill. 340; *Cody* v. *State,* 31 Tex. Cr. R. 183, 20 S. W. 398; *Scarver* v. *State,* 53 Miss. 407.

[7]   But a series of larcenous acts, regardless of the amount and value of the separate parcels or articles taken, and regardless of the time occupied in the performance, may and will constitute, in contemplation of law, a single larceny, provided the several acts are done pursuant to a single impulse and in execution of a general fraudulent scheme. 2 Whart. Cr. Law (11th ed.), sec. 1169; *Idem.,* vol. 1, sec. 34; *Woods* v. *People,* 222 Ill. 293, 78 N. E. 607, 7 L. R. A. (N. S.) 520, 523-4, and note, 113 Am. St. Rep. 415, 6 Ann. Cas. 736; 1 Bouv. L. Dict., Rawles 3d Rev., p. 657.

[8]   Viewed in the light of these principles, it is mani-fest that, in the abstract, both the original instruction and the amendment thereto embody correct legal propositions. This, we believe, is conceded. It is claimed, however, that there was no evidence upon which to base the amendment. We cannot accept this view. The proof plainly tended to show that the articles were stolen and, particularly as to those contained in the "treasure trunk," that they disap-peared during a brief absence from home of the owner, the accused having apparently availed herself of the opportun-ity thus afforded to commit the crime. This in itself was enough to warrant the inference that she took the contents of the trunk under a single impulse, and that whether she

removed them in parcels or as a whole, she was simply carrying out a general purpose to steal them all. Indeed, except for her own testimony (contradicted by Mrs. Robertson and rejected by the jury) in which she claimed that some of the goods were given, or lent, or sold to her, there was no proof that she did in fact carry them off at substantially different times. Mrs. Robertson's statement, that she missed some things about the house "from time to time," relates, as the context plainly shows, to a period just subsequent to the defendant's term of service in the house. It was because she missed certain things that Mrs. Robertson's suspicion was aroused, and this led to the discovery that *all of the articles mentioned in the indictment* were gone; and they were all found in the possession of Frances West.

[9] The mysterious disappearance of these articles was evidence that they had been taken with criminal intent. Their possession by the accused indicated that she had stolen them all, and the burden of showing how she got them was thereby shifted to her. 17 R. C. L., p. 65, sec. 69, and authorities cited; 2 Whart. Cr. Law (11th ed.), sec. 1231.

The case is simply one in which the accused is shown to have stolen a quantity of goods, but without anything to show how, or when, or in what quantities, the asportation took place, except that it was most probably done within a certain brief period of the owner's absence.

Under these circumstances it may well be doubted whether the accused was entitled to any instruction which would have permitted the jury to separate the offense into separate units so as to reduce the grade and punishment of the crime. If she had admitted the stealing and had then claimed that she took the various articles at substantially different times, there would have been evidence before the jury upon which

to base an instruction on the theory of a series of separate and petit larcenies.

If, however, it be conceded that the accused was entitled to an instruction based on the theory that she stole the articles at substantially different times, and in separate parcels of less value than $50 each, then it was clearly the duty of the court, in view of the evidence as above detailed, to present to the jury the further view that stealing goods in parcels pursuant to a single impulse constitutes the same crime as if they are taken all at once.

[10] It is further contended that even if the Commonwealth was entitled to an instruction on the theory last above indicated, such theory ought to have been made the subject of a separate instruction. The literal criticism of the amendment, as stated in the brief, is, "that to present two theories in a single instruction, even if the latter was correctly stated by the court, made the instruction contradictory, unintelligible and misleading." This is a novel contention. A far more common and meritorious proposition and one, the disregard of which has frequently resulted in reversals by this court, is that the failure to notice in the instructions on one side a theory relied upon and embodied in the instructions for the other, results in apparent contradiction, tending to confuse and mislead the jury. *Bowles* v. *Commonwealth*, 103 Va. 816, 830, 48 S. E. 527; *C. & O. Ry. Co.* v. *Saunders*, 116 Va. 826, 83 S. E. 374; *Washington-Southern Ry. Co.* v. *Grimes' Adm'r*, 124 Va. 460, 98 S. E. 30.

[11] The further objection that the court's addendum to the instruction omitted any reference to the value of the property is likewise untenable. The jury had already been told, in the first branch of the charge, that the accused could not be convicted of grand larceny unless she had taken goods of the value of $50 or more at one time. The amendment, following as a part of the same sentence, merely explained

to the jury the circumstances under which they might re-
gard the taking of the goods in parcels at different times
as equivalent in law to taking them at one time.

The instruction was free from prejudicial error, the evi-
dence supported the verdict, and the judgment must be
affirmed.

*Affirmed.*