COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, Alston and Decker
Argued by teleconference

MIRIAM L. WHITE

v.       Record No. 0540-13-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROSSIE D. ALSTON, JR.
MARCH 4, 2014

FROM THE CIRCUIT COURT OF RAPPAHANNOCK COUNTY
Jeffrey W. Parker, Judge

William A. Boge for appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Miriam L. White (appellant) appeals her convictions of grand larceny in violation of

Code §§ 18.2-95 and 18.2-99. On appeal, appellant alleges that the trial court "erred when it

denied appellant's motion to strike three of the four grand larceny indictments at the conclusion

of the Commonwealth's case-in-chief and renewed at the close of all evidence, when, under the

single larceny doctrine, the evidence was insufficient to prove, and no rational fact finder could

reasonably infer, that appellant formed four separate and distinct intentions to steal or commit

four separate thefts, when the evidence clearly established that the theft or thefts of lumber

resulted from a single larcenous impulse or scheme that was part of one continuous act."

Finding no error, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. Background[1]

On January 18, 2012, appellant and her husband entered into a two-year residential lease agreement ("lease") with 14048 Lee Highway, LLC, by and through James Fletcher, as manager of the LLC, for a one-hundred acre parcel of real property located at 14048 Lee Highway in Rappahannock County. The property is commonly referred to as Duchesse Farm. The lease provided for a monthly rental amount of $5,000 and included an exclusive option for the Whites to purchase the property for $1.05 million, provided the Whites gave Fletcher notice of their intent to purchase by midnight on January 31, 2013.

On March 28, 2012, appellant met with Leonard Cameron, a logger, at Duchesse Farm for the purpose of entering into an agreement with Cameron to cut trees on the property. Cameron and appellant walked the property together and Cameron pointed out which trees he would cut, and appellant agreed. That same day, Cameron and appellant entered a timbering contract pursuant to which Cameron would cut trees on Duchesse Farm, market the timber, and share the proceeds equally with appellant (the "contract"). The terms of the contract stated that, "By signing below, I, the property/timber owner, and I, Leonard Cameron, agree to the terms and conditions of this contract."

Cameron began timbering Duchesse Farm on March 29, 2012, and hauled a total of ten trailer loads of cut timber to a nearby sawmill. During the timbering operation, Cameron would come and go when he chose. Sometimes appellant was on the property when Cameron was timbering and other times, she was not. Cameron delivered loads of timber to the sawmill on March 29, 2012, April 2, 2012, April 4, 2012, and April 5, 2012. Cameron paid appellant her share of the proceeds from the timber in a total of three payments including $1,064.69 in cash for

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

the first two trailer loads, $3,072.12 in cash for the next five trailer loads, and $1,593.33 by way of a cashier's check for another two trailer loads.

On April 11, 2012, James Fletcher heard from a friend that a big oak tree on Duchesse Farm had been cut down, along with many others. Fletcher visited the property that day with his friend and confronted appellant about timbering the property without his permission. Fletcher called the police. At this point the timbering operation was terminated. Subsequently, Cameron paid a payment of $4,800 for the last trailer load to Fletcher rather than appellant.

Appellant was interviewed twice by law enforcement officers who testified at trial that appellant alternatively claimed to be the owner or purchaser of the property or a lessee with a purchase option when she hired Cameron. Regardless of her status with respect to Duchesse Farm, appellant maintained that she had permission from Fletcher to "do whatever she wanted" with the property, including clearing horse trails or cutting firewood, before she hired Cameron. Fletcher on the other hand, testified at trial that he gave appellant permission to cut firewood or clear narrow horse trails, but not to engage in a timbering operation for profit. Fletcher also testified that he told appellant not to cut trees without his permission. Cameron testified that, at all times during the logging operation at Duchesse Farm, he believed appellant to be the owner of the property. He recalled that appellant "mentioned something about thinning the woods out for horse trails" however he "was there to do logging." Cameron also testified that he cut trees on areas of the property that would not have been suitable for horse trails.

At the close of the Commonwealth's evidence, appellant moved to strike three of the four indictments, arguing that, under the single larceny doctrine, her criminal "act" was telling Cameron to cut down the trees and that constituted one, not four, larcenous acts. Alternatively, appellant argued that at most, the Commonwealth proved a series of misdemeanor larcenies, though no evidence was introduced at trial as to the value of each tree cut down. The trial court

denied the motion to strike, relying heavily on the fact that there were four asportations of trees from Duchesse Farm to the sawmill as evidence showing that four separate larcenies occurred.

Appellant testified in her defense that she spoke with Fletcher before cutting down any trees and he told her, "Do what you want. It's your place. Don't call me." Appellant further testified that she did not intend to steal the trees and that she thought she had permission from Fletcher to cut them down. Two of appellant's friends and her daughter all testified that they observed conversations between appellant and Fletcher regarding cutting trees on the property and that he had given appellant permission to clear horse trails and cut firewood.

At the close of evidence, appellant renewed her motion to strike, which the trial court again denied. A jury convicted appellant of four counts of grand larceny in violation of Code §§ 18.2-95 and 18.2-99, and the trial court subsequently sentenced appellant accordingly. This appeal followed.

## II. Analysis

At the outset, we note that the issue in this appeal is not one that stands in a neutral posture; it is a sufficiency of the evidence issue, subject to a highly deferential standard of review.[2] On appeal, an appellate court is required to "'consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial.'" Perry v. Commonwealth, 280 Va. 572, 578, 701 S.E.2d 431, 435 (2010) (quoting Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000)). This deferential standard also applies "to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010) (citing Johnson v. Commonwealth, 209 Va. 291, 295, 163 S.E.2d 570, 574 (1968)). "When reviewing the sufficiency of the evidence to support a conviction, the Court will

---

[2] Appellant concedes that she did not proffer a jury instruction setting forth the single larceny doctrine.

affirm the judgment unless the judgment is plainly wrong or without evidence to support it."

Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008) (citing Coles v.

Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005); Burns v. Commonwealth, 261

Va. 307, 337, 541 S.E.2d 872, 892 (2001)).  The issue on appeal is "whether the record contains

evidence from which *any* '*rational trier of fact* could have found the essential elements of the

crime beyond a reasonable doubt.'"  Young v. Commonwealth, 275 Va. 587, 591, 659 S.E.2d

308, 310 (2008) (emphasis added) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The Supreme Court of Virginia has articulated the single larceny doctrine[3] as:

> Broadly stated, the taking of property at different times, though
> from the same place and the same owner, will constitute separate
> offenses; and no aggregation of successive petit larcenies, not
> constituting parts of a continuous transaction, but each complete
> and distinct in itself, can be combined in one prosecution so as to
> make a case of grand larceny.
>
> But a series of larcenous acts, regardless of the amount and value
> of the separate parcels or articles taken, and regardless of the time
> occupied in the performance, may and will constitute, in
> contemplation of law, a single larceny, provided the several acts

---

[3] The Commonwealth argues that the single larceny doctrine does not apply to violations of Code § 18.2-99, "Larceny of things fixed to the freehold," because it abrogates the common law definition of larceny.  Virginia courts have "only applied [the single larceny doctrine] to those statutory offenses for which we can ascertain no intent by the legislature to abrogate the theory of common law larceny."  Scott v. Commonwealth, 36 Va. App. 276, 280, 549 S.E.2d 624, 626 (2001) (citing Acey v. Commonwealth, 29 Va. App. 240, 248-49, 511 S.E.2d 429, 432-33 (1999)).

At common law, larceny was defined as "the wrongful or fraudulent taking of *personal goods* of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently."  Dunlavey v. Commonwealth, 184 Va. 521, 524, 35 S.E.2d 763, 764 (1945) (emphasis added) (citation omitted).  The Commonwealth argues that, because Code § 18.2-99 provides that "Things which savor of the realty, and at the time they are taken part of the freehold . . . shall be deemed goods and chattels of which larceny may be committed," it shows an intent of the legislature to abrogate the common law definition of larceny and, therefore, the single larceny doctrine does not apply.  Though we acknowledge the interplay between the common law and the statutory definition of larceny pursuant to Code § 18.2-99, for purposes of this appeal, and in part because appellant was convicted pursuant to both Code § 18.2-95 and § 18.2-99, we assume without deciding potential application of the single larceny doctrine to violations of Code § 18.2-99.

are done pursuant to a single impulse and in execution of a general fraudulent scheme.

West v. Commonwealth, 125 Va. 747, 754, 99 S.E. 654, 656 (1919) (citations omitted). "The overriding principle behind the single larceny doctrine is to prevent the state from aggregating multiple criminal penalties for a single criminal act." Richardson v. Commonwealth, 25 Va. App. 491, 496, 489 S.E.2d 697, 700 (1997). Virginia jurisprudence has identified five main factors to consider when determining whether the single larceny doctrine applies: "(1) the location of the items taken, (2) the lapse of time between the takings, (3) the general and specific intent of the taker, (4) the number of owners of the items taken, and (5) whether intervening events occurred between the takings." Acey v. Commonwealth, 29 Va. App. 240, 247, 511 S.E.2d 429, 432 (1999). "The primary factor to be considered is the intent of the thief and the question to be asked is whether the thefts . . . were part of one impulse." Richardson, 25 Va. App. at 497, 489 S.E.2d at 700. In determining a thief's intent, it is not enough that she act pursuant to a "general fraudulent scheme," rather she must act upon one larcenous impulse. As we noted in Richardson:

> Although the taking of several items belonging to different persons from the same general area pursuant to the same larcenous impulse will constitute a single larceny, a series of thefts committed in rapid succession pursuant to a *general scheme to steal* from distinct locations, such as different shops, stores, or buildings, will constitute separate offenses.

Id. (citing State v. Cabbell, 252 N.W.2d 451, 453 (Iowa 1977)).

Applying the Acey factors in this case, we note that though the trees were taken from one parcel of real property, Duchesse Farm is a vast, one-hundred-acre property, and Cameron cut trees from various areas throughout the property. The lapse of time between the takings was eight days, over which Cameron hauled multiple trailer loads of trees to the sawmill. There was one owner of the trees; however we do not find this factor dispositive for, as noted in West, "the

taking of property at different times, though from the same place and the same owner, will constitute separate offenses." 125 Va. at 754, 99 S.E. at 656. We do not note evidence of intervening events between the takings.

As with all single larceny doctrine cases, the primary factor in this case is appellant's general and specific intent. Though the contract between appellant and Cameron certainly evinced appellant's general intent to steal trees from Fletcher, it did not define appellant's specific, criminal impulse each time the trees were cut, loaded, and removed from the property. Notably, the barebones contract did not specify which trees would be taken, how much timber Cameron would remove, or how much money appellant would collect as a result of the timbering operation.

In Richardson, we held that the single larceny doctrine did not apply when the defendant stole various items from different departments, floors, and buildings in a hospital complex on the same day. 25 Va. App. at 494, 489 S.E.2d at 699. In so holding, we noted that though defendant acted pursuant to a "single general scheme to steal," he committed separate larcenies because "each was a separate and distinct offense and was not part of the same impulse or continuous larcenous act at the same location." Id. at 498, 489 S.E.2d at 701.

In this case, appellant performed multiple asportations of stolen trees over an eight-day period.[4] Within that period, Cameron cut down trees spanning the vast property and sold them to the sawmill on four separate dates. At trial, Cameron testified that he would "pick[] up a check every Thursday evening, get it cashed, then Friday morning [he would] go up and pay

---

[4] We note that it is irrelevant that Cameron, rather than appellant, physically cut down the trees and removed them from the property as "under Virginia law, the asportation element of larceny may be imputed to a defendant who acts through an innocent agent." McAlevy v. Commonwealth, 44 Va. App. 318, 325, 605 S.E.2d 283, 286 (2004). By signing the contract, appellant represented herself as the owner of Duchesse Farm. Further, Cameron testified that at all times when he cut down trees on the property, he believed appellant was the owner.

[appellant]." Appellant collected three separate checks for the loads Cameron sold.[5] Unlike in Richardson, where the larcenies occurred on the same day in the same hospital complex, appellant established a pattern of stealing from a vast property over a much longer period of time.

In a sufficiency of the evidence case, we must "review [the trial court's] factfinding with the highest degree of appellate deference" and only assess whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (quoting Stevens v. Commonwealth, 46 Va. App. 234, 239, 616 S.E.2d 754, 761 (2005) (*en banc*)). In light of the standard of review, we cannot say that no rational trier of fact could have found that appellant formed a distinct larcenous impulse each time Cameron removed trees from the property, sold them at the sawmill, and paid appellant her share of the proceeds.

For the foregoing reasons, we hold the trial court did not err in denying appellant's motion to strike three of the four grand larceny indictments.

Affirmed.

---

[5] Cameron testified that he sold the fourth load after learning Fletcher owned the property and with Fletcher's permission. The check for the fourth load was therefore split between Cameron and Fletcher.